UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEREDITH SPRINGFIELD ASSOCIATES, INC. | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 17-cv-30035-MGM ) |
| PUMA LOGISTICS, LLC, et al. | ) ) ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT AGAINST DEFENDANT PUMA LOGISTICS, LLC
(Dkt. No. 21)

I. INTRODUCTION

In this matter, plaintiff Meredith Springfield Associates, Inc. ("Plaintiff") seeks a default judgment against defendant Puma Logistics, LLC ("Puma"). Plaintiff alleges that it suffered losses when its products were damaged while being transported by Puma when the truck carrying the products collided with a bridge. Plaintiff's Application for Entry of Default Judgment (the "Motion") was referred to me for a report and recommendation by presiding District Judge Mark G. Mastroianni (Dkt. Nos. 24, 39). *See* 28 U.S.C. § 636(b)(1)(B). The court held a hearing on Plaintiff's Motion on January 8, 2018 and set a deadline for a further submission (Dkt. No. 28). Plaintiff having demonstrated that Puma failed to appear or otherwise defend this suit and having dismissed all of its claims against the other defendants in the case, Plaintiff is entitled to a entry of a final judgment on its complaint including a default judgment under Federal Rule of Civil Procedure 55(b)(2) against Puma. Having reviewed Plaintiff's submissions, the court recommends that Plaintiff's Motion be GRANTED and that a default judgment enter against

1

Puma in Plaintiff's favor in the amount of $21,207,66 with attorneys' fees and costs in the amount of $8,099.30.

      II.      <u>RELEVANT PROCEDURAL AND FACTUAL BACKGROUND</u>

Plaintiff filed its complaint in this court on March 30, 2017 against Puma, Sweeney Transportation, Inc. ("Sweeney Transportation") and J.P. Morgan Chase Bank, N.A ("J.P. Morgan") (Dkt. No. 1). Sweeney Transportation and J.P. Morgan were timely served (Dkt. Nos. 6, 7). Shortly thereafter, Plaintiff filed stipulations of dismissal as to Sweeney Transportation and J.P. Morgan (Dkt. Nos. 16, 17). Despite diligent efforts, Plaintiff had difficulty in serving Puma (Dkt. No. 22 at 1, ¶¶ 2-4). In early September 2017, Plaintiff received certification from the Texas Secretary of State that the office could not serve Puma's registered agent because the registered agent could not be found at the address Puma had provided to the Texas Secretary of State (Dkt. No. 22-1). Pursuant to Tex. Civ. Prac. & Rem. Code § 17.044 and Tex. Bus. Org. Code §§ 5.251-252, a party has made effective service if the party serves the Texas Secretary of State and allows that office to either serve the complaint or conclude that it cannot make service upon a registered agent of a Texas corporation because the Texas corporation has not maintained an agent in Texas. In the event the latter occurs, service is deemed to have been made upon the Texas corporation by means of service upon the Texas Secretary of State. Here, the Texas Secretary of State has certified that it was unable to serve Puma because of Puma's failure to maintain an agent in Texas to accept service of process (Dkt. No. 22-1). Under federal and Texas law, therefore, Puma is deemed to have been properly served. *See* Fed. R. Civ. P. 4(e)(1) and h(1)(A). In addition, there is evidence that Puma was made aware of Plaintiff's claims against it. *See infra*, page 4. The clerk entered default against Puma on December 20, 2017 (Dkt. No. 25).

In view of Puma's s failure to appear, the facts alleged in the complaint as to Puma are taken to be true.  *See, e.g., Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002); *Int'l Union of Operating Engrs, Local 4 v. Stanley Excavation*, 243 F.R.D. 25, 27 (D. Me. 2007) (quoting *Katahdin Paper Co., LLC v. U & R Sys., Inc.*, 231 F.R.D. 110, 112 (D. Me. 2007))*.* According to the complaint, Plaintiff is in the business of manufacturing and selling plastics products.  On or around March 1, 2016, plaintiff called Sweeney Transportation to request transportation of a load of products from Plaintiff's factory to a customer in Pennsylvania.  On or around March 3, 2016, a truck arrived at Plaintiff's factory and picked up the products.  A non-negotiable bill of lading was executed listing Sweeney Transportation as the carrier.  The bill of lading represented that when the products were picked up they were properly packaged and in proper condition for transportation (Dkt. No. 1 at 2, ¶¶ 7, 11-13).

Later in the day on March 3, 2016, the truck that had picked up the products returned to Plaintiff's factory after having collided with a bridge.  The products had not been delivered and were damaged in the accident.  Plaintiff refused to unload the products because of the dangerous condition of the damaged truck.  The driver proceeded to unload the products onto Plaintiff's loading dock (*id.*, ¶¶ 14-17).  Plaintiff promptly offered Sweeney Transportation the opportunity to inspect the damaged products.  Sweeney Transportation declined to inspect the products and informed Plaintiff that it had subcontracted transportation of the products to a company called Landstar Ranger, Inc. ("Landstar") (*id.* at 3, ¶¶ 18-20).  Plaintiff reached out to Landstar and offered the company the opportunity to inspect the damaged products.  Landstar declined to inspect, but asked Plaintiff to take photographs of the damaged goods, which Plaintiff did.  Plaintiff then discarded its damaged products (*id.*, ¶¶ 21-23).

Plaintiff later learned that Landstar had in turn subcontracted transportation of its products to Puma. On or around July 6, 2016, Puma's insurer, Great American Insurance Group, issued a check, made out jointly to Plaintiff and Puma, intended to compensate Plaintiff for a portion of its loss arising from the damage to its products (*id.* at 3-4, ¶¶ 26, 28-29). Puma proceeded to deposit the check into its J.P. Morgan account without Plaintiff's endorsement. Plaintiff did not authorize or consent to Puma depositing the check (*id.* at 4, ¶¶ 30-33).

Plaintiff has submitted additional evidence through its attorney's affidavit that Puma was on notice of Plaintiff's claims and the basis of those claims. Plaintiff's attorney had multiple communications with Puma's insurance company about Plaintiff's claims against Puma. Plaintiff also had such communications with Puma's insurer before the complaint was filed in this court (Dkt. No. 22 at 2, ¶¶ 6-7). Plaintiff reached a settlement with Puma's insurer, Great American Insurance Group ("Great American") in the amount of $11,599.33, of which $10,599.33 was to be paid to Plaintiff by the insurer with Puma paying a $1,000 deductible to Plaintiff. Plaintiff submitted as evidence a copy of a letter Great American wrote to Puma to notify Puma about the settlement and the basis for that settlement (Dkt. No. 30-2 at 1-2). Subsequently, Great American sent the settlement check to Puma. Plaintiff submitted a copy of the check as evidence. Despite the fact that the check was made out jointly to Puma and Plaintiff, Puma deposited the check in its J.P. Morgan account without any endorsement by Plaintiff (Dkt. No. 30-1). Puma has not compensated Plaintiff for any part of the value of its damaged products. Plaintiff's complaint asserts claims against Puma for unfair and deceptive business practices in violation of Mass. Gen. Laws ch. 93A ("Chapter 93A") (Count II) and conversion (Count III) based on Puma's misappropriation of the Great American check intended to reimburse Plaintiff for part of its March 3, 2016 loss (Dkt. No. 1 at 5, ¶¶ 38-43).

III. DISCUSSION

a. Standard of Review

While a court should accept as true the well-pleaded factual allegations in the complaint when considering a motion for entry of default judgment, the court "need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages." *Virgin Records Am., Inc. v. Bagan*, Civ. No. 08-4694 (WHW), 2009 WL 2170153, at *2 (D.N.J. July 21, 2009) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). A court should conduct its own inquiry to ascertain the amount of damages with reasonable certainty. *See id.* (quoting *Int'l Assoc. of Heat & Frost Insulators v. S. Jersey Insulation Servs.*, No. 05-3143, 2007 WL 276137, at *1 (D.N.J. Jan. 26, 2007)).

b. Damages

At the hearing on Plaintiff's application for entry of a default judgment, Plaintiff's counsel stated that Plaintiff seeks a judgment in the amount of $10,603.83 – the amount of the check misappropriated by Puma – trebled pursuant to Chapter 93A and attorneys' fees and costs totaling $8,099.30. Plaintiff contends that the facts establish that Puma committed the common law tort of conversion when it deposited the Great American check and that this conversion of funds provides a basis for liability under Chapter 93A. "The elements of conversion require that a defendant be proved to have 'intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time.'" *Grand Pac. Fin. Corp. v. Brauer*, 783 N.E.2d 849, 857 (Mass. App. Ct. 2003) (quoting *Abington Nat'l Bank v. Ashwood Homes, Inc.*, 475 N.E.2d 1230, 1233 (Mass. App. Ct. 1985)). Accepting as true the allegations in the complaint, supplemented by the evidence submitted by Plaintiff (the letter from Great American to Puma and the check made out to Puma and Plaintiff), Puma

5

intentionally and wrongfully exercised ownership and control over a check for $10,603.83 from Great American that was intended to settle Plaintiff's claim against Puma for the March 3, 2016 damage to Plaintiff's products (Dkt. Nos. 30-1, 30-2).

There is authority supporting Chapter 93A liability when a business partner engages in conversion. *See Grand Pac. Fin. Corp.*, 783 N.E.2d at 862-63. While "the dimensions of Chapter 93A liability are difficult to discern with precision," *Cambridge Plating Co., Inc. v. Napco, Inc.*, 85 F.3d 752, 769 (1st Cir. 1996), the First Circuit has explained that:

> Chapter 93A liability may exist if the defendant's conduct falls "within at least the prenumbra of some common-law, statutory, or other established concept of unfairness" or is "immoral, unethical, oppressive or unscrupulous." *PMP Assoc., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 321 N.E.2d 915, 917 (1975). Thus, proof of a common law tort, while not necessary for liability, *see Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc.*, 403 Mass. 722, 532 N.E.2d 660, 664 (1989) ("a violation of G.L. c. 93A, § 11, need not be premised on a violation of an independent common law or statutory duty"), may be sufficient. *See Anthony's Pier Four, Inc. v. HBC Assoc.*, 411 Mass. 451, 583 N.E.2d 806, 822 (1991) (breach of implied contractual duty of good faith and fair dealing gave rise to Chapter 93A liability); *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 642 N.E.2d 587, 594 (1994) (intentional misrepresentation provided basis for Chapter 93A liability.

*Id.* Puma's act of misappropriating its insurer's payment intended to compensate Plaintiff for the damage to its products amounts to conversion and may fairly be described as unscrupulous. Puma's "liability under Chapter 93A follows almost as a matter of course." *Id.* Thus, the court concludes that Plaintiff's allegations establish Puma's liability to Plaintiff under Chapter 93A.

There remains the question of the amount of damages to which Plaintiff is entitled under Chapter 93A. "Punitive [or multiple] damages are awarded only for 'willful or knowing' violations of Chapter 93A." *Id.* at 770 (citing Mass. Gen. Laws ch. 93A, § 11) (providing for up to three, but not less than two, times actual damages for a willful or knowing Chapter 93A violation)). The Massachusetts Supreme Judicial Court has instructed that "[t]he Legislature

envisaged multiple damage awards against those defendants with a higher degree of culpability than that sufficient to ground simple liability." *Kansallis Fin. Ltd. v. Fern*, 659 N.E.2d 731, 738 (1996).  In the court's view, Puma displayed a "purposeful level of culpability" in appropriating the settlement funds that Puma knew were supposed to be paid to Plaintiff.  *See Wasserman v. Agnastopoulos*, 497 N.E.2d 19, 24-25 (Mass. App. Ct.), *rev. denied*, 499 N.E.2d 298 (1986). Because Puma's misconduct was knowing and willful, Plaintiff is entitled to multiple damages. While the court agrees that punitive damages are justified, the court does not agree that an award of treble damages is warranted.  The conversion was a single instance of misconduct and concerned a relatively modest amount of money.  Plaintiff has not explained the extent of its remaining loss from this event after settlement of its claims against Sweeney Transportation and J.P. Morgan.  *See Polycarbon Indus., Inc. v. Advantage Eng'g, Inc.*, 260 F. Supp. 2d 296, 306-07 (D. Mass. 2003) (considering the impact on plaintiff of defendant's misconduct for purposes of determining measure of punitive damages).  Accordingly, the court recommends doubling Plaintiff's loss of $10,603.83 for an award of $21,207.66 on Plaintiff's Chapter 93A claim.

      Plaintiff's complaint seeks interest on any award against Puma (Dkt. No. 1 at 6).  "The Supreme Judicial Court has indicated that prejudgment interest may only accrue on the nonpunitive portion of the damages, the amount computed without doubling or trebling." *Trenwick Am. Reinsurance Corp. v. IRC, Inc.*, Civ. Action No. 07cv12160-NG, 2011 WL 2009919, at *1 (D. Mass. May 23, 2011).  Accordingly, the court recommends that the final judgment provide for prejudgment interest at 12% per annum (the state interest rate), running from the date of filing through entry of judgment on $10,603.83 of the recommended award and postjudgment interest at the prevailing federal rate on the entire award running from entry of final judgment.

Plaintiff is also entitled to an award of reasonable attorneys' fees and costs. "General Laws. c. 93A provides that '"reasonable attorneys' fees and costs" shall be awarded if a judge finds that a defendant has violated the statute, regardless of the amount in controversy.'" *Hyannis Anglers Club, Inc. v. Harris Warren Commercial Kitchens, LLC*, 78 N.E.3d 784, 791-92 (Mass. App. Ct. 2017) (quoting *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 837 N.E.2d 1121, 1137 (Mass. App. Ct. 2005) (quoting Chapter 93A, § 11)). "The 'lodestar' method [of calculating fee awards] is preferred because it produces 'generally consistent results from case to case.'" *Id.* at 793 (quoting *Fontaine v. Ebtec Corp.*, 613 N.E.2d 881, 891 (Mass. 1993)). The lodestar method of calculating a fee award considers the number of hours reasonably spent on the case times a reasonable hourly rate. *See, e.g., Fontaine*, 613 N.E.2d at 890. Plaintiff has submitted unredacted legal bills to support its claim for attorneys' fees (Dkt. No. 29-1 at 2-14). The time reflected in these bills appears to have been reasonably spent and charged at a reasonable rate. A substantial part of the time was spent trying to serve Puma and in communications with Puma's insurer. Puma's misappropriation of the Great American check resulted in consideration of possible claims against the insurer. This work is all fairly related to the Chapter 93A claim which Plaintiff asserted against Puma. Moreover, the fees requested are proportional to the damages award this court is recommending. *See Trenwick*, 2011 WL 2009919, at *4. As to the hourly rate, much of the work appears to have been performed by an associate at a lower hourly rate rather than by a partner. For these reasons, the court recommends an award of attorneys' fees in an amount of $7,900.50 (Dkt. No. 29 at 1, ¶ 3). Costs shown in these legal bills total a modest $198.80 (*id.* at ¶ 4), and were incurred in large part in attempts to serve Puma. Plaintiff is entitled to recover these costs. Accordingly, I recommend an award of attorneys' fees and costs totaling $8,099.30.

IV. CONCLUSION

For the foregoing reasons, I recommend that a final judgment enter in this case dismissing the claims against Sweeney Transportation, Inc. and J.P. Morgan Chase Bank, N.A. with no damages, fees, or costs awarded to any party on these claims. I further recommend that the final judgment include a default judgment in Plaintiff's favor against Puma Logistics, LLC in the amount of $21,207.66, with interest at 12% per annum running on $10,603.83 of the award through the entry of judgment and postjudgment interest at the prevailing rate running on the entire award from the date of judgment. Finally, I recommend that the judgment include an award to Plaintiff of attorneys' fees and costs fees and costs totaling $8,099.30.[1] The Clerk's Office should be directed to close the case after entry of final judgment.

Dated: May 7, 2018                    /s/ Katherine A. Robertson
                                      KATHERINE A. ROBERTSON
                                      UNITED STATES MAGISTRATE JUDGE

---

[1] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.